UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER MAZARIEGOS,<br><br>Defendant. | Case No. 20-cr-00003-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**<br><br>Docket No. 33 |

## I. INTRODUCTION

A grand jury indicted Defendant Alexander Mazariegos with one count of illegal reentry following removal under 8 U.S.C. sections 1326(a) and (b)(1). Pending before the Court is Defendant's motion to dismiss the Indictment on the grounds that the predicate removal on which this single-count Indictment relies violated his due process rights. Docket No. 33 ("Mot."). For the reasons discussed below, the Court **DENIES** the motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a Guatemalan citizen who entered the United States in April 2012 by crossing the border into Arizona. Docket No. 33-1 ("Deft. Decl.") at ¶ 3. He was arrested and held in a detention facility for two or three weeks. *Id*. ¶ 4. Thereafter, Defendant was removed from the United States to Guatemala via expedited removal on May 2, 2012. Docket No. 21-3 (2012 removal order).

Defendant reentered the United States on January 26, 2016 with his daughter. Docket No. 33-2, Ex. C at Bates 100. U.S. Border Patrol apprehended him and his daughter and processed them as a family unit. *Id*. Both were released under an Order of Supervision to live with

1   Defendant's sister in Virginia.  Deft. Decl. at ¶ 16.  As part of the Order of Supervision, Defendant
2   was required to wear a GPS ankle monitor; he was not allowed to travel outside of Virginia
3   without written notice.  Docket No. 21-5 at 3.  In July 2017, Defendant removed his ankle monitor
4   in violation of the order and traveled to live in Oakland, California.  Docket No. 21-6.  A federal
5   grand jury indicted Defendant on January 7, 2020.  Docket No. 1.  Defendant filed his motion to
6   dismiss collaterally challenging the constitutionality of the 2012 expedited removal, which is the
7   predicate offense on which this Indictment is based.  *See* Mot.

### III.     LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense."  In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."  *Id.*

Defendant argues that his prior removal cannot serve as the basis for an illegal-reentry charge.  8 U.S.C. § 1326(d) requires a defendant to "demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'"  *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting § 1326(d)).

### IV.     DISCUSSION

The principle argument in Defendant's motion to dismiss is that the expedited removal order in 2012 violated his due process rights because he was not on notice that he was being removed.  And because it violated his due process rights, it cannot, according to Defendant, be the basis for this criminal charge for illegal reentry.  Specifically, Defendant contends that the immigration officer did not inform him of the nature of the proceedings, and Defendant was merely following this officer's commands when signing and initialing the paperwork.  Defendant

contends the forms advising him of rights were not all properly completed and signed. The Government responds that the immigration officer adequately informed Defendant of the charge against him and afforded him an opportunity to respond.

"An expedited removal proceeding under 8 U.S.C. § 1225 allows immigration officers to (1) determine whether certain aliens are inadmissible, and (2) enter removal orders, generally without hearing or further review." *Raya-Vaca*, 771 F.3d at 1199. The Ninth Circuit has laid out the expedited removal procedures as follows:

> During an expedited removal proceeding, an immigration officer must conduct an inspection and determine whether the alien is inadmissible because the alien (1) has made a material misrepresentation to gain admission into the United States, (2) has "falsely represent[ed]" himself to be a United States citizen, or (3) does not possess a "valid entry document." *See* 8 U.S.C. § 1225(a)(3), (b)(1)(A)(i); *see also id.* § 1182(a)(6)(C)(i), (a)(6)(c)(ii)(I), (a)(7)(A)(i). When making a finding of inadmissibility, the examining immigration officer must "create a record of the facts of the case and statements made by the alien." 8 C.F.R. § 235.3(b)(2)(i). The officer "shall . . . have the alien read (or have read to him or her) the statement." *Id.* Moreover, the officer "shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.* Then, if the officer determines the alien to be inadmissible, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

*Id.* at 1199–200.

To show that Defendant's 2012 expedited removal cannot serve as a predicate for his criminal charge of illegal reentry, he must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d). In the context of challenging an expedited removal, the first two prongs are automatically established because "the statute governing expedited removal proceedings afforded [Defendant] no opportunity for administrative or judicial review." *Raya-Vaca*, 771 F.3d at 1202. Thus, the Court must decide whether the expedited removal was so fundamentally unfair that it violated his right to due process.

3

1    Defendant argues the 2012 removal proceeding violated his due process rights because it
2    failed to comply with mandatory regulations. Specifically, under 8 C.F.R. section 235.3(b)(2)(i),
3    the following must occur:

> [**1**] the examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A . . . ; [**2**] the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement . . . ; [**3**] the alien shall ***sign and initial each page*** of the statement and each correction . . . ; [**4**] the examining immigration officer shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal . . . ; [**5**] the alien shall be given an opportunity to respond to those charges in the sworn statement . . . [**6**] the examining immigration official shall serve the alien with Form I–860 ***and the alien shall sign the reverse of the form acknowledging receipt***.

*Id*. (emphasis added).

Here, Defendant contends the immigration officer failed to follow Section 235.3(b)(2)(i) in two ways. First, because the only page on the Form I–867B that contains Defendant's signature had a typographical error in the signature block: it attests that "I have read (or had read to me) this statement, consisting of ***1*** pages (including this page)" but, in fact, the actual document contained ***three*** pages in total. Deft. Decl., Ex B (emphasis added). While the three pages of this form did contain Defendant's initials, he submits a declaration in support of this motion that testifies he only initialed those pages because the immigration officer directed him to do so. *Id*. ¶¶ 10–11. He maintains that he believed he did not read the form, and the immigration officer did not read it to him. *Id*. ¶ 10. Second, Defendant contends that he did not complete the last step—*i.e.*, he did not sign the back of the Form I–860, which, according to Defendant, presumes that the officer did not serve him, so he could not acknowledge receipt of the charge.

In response, the Government argues that the immigration officer read the printed language on Form I–867A and his rights to Defendant in Spanish; questioned Defendant in Spanish; gave Defendant an opportunity to respond; read back the answers he transcribed for Defendant on Form I–867B; and had Defendant initial each page and sign the form. Lastly, the Government contends the lack of Defendant's signature on the Form I–860 does not transform the expedited-removal proceeding into a fundamentally unfair process—because it is a technical error at most.

4

As to the issue regarding the Form I–860, the advisement of rights, and whether Defendant knew he was undergoing a removal proceeding, this Court held a four-part evidentiary hearing in which it heard extensive testimony from Defendant and the processing officer (U.S. Border Patrol Agent Luis Trujillo) via videoconferencing.  Although Agent Trujillo did not testify to remembering Defendant specifically, he testified credibly regarding his practices and training with respect to apprehending aliens and processing the relevant paperwork for expedited removal, which includes interviewing the detainee while filling out a questionnaire and reading the alien his or her rights as recited in the I–867 and I–860, in Spanish if necessary.  Moreover, at the time of Defendant's apprehension, Agent Trujillo was undergoing training in the early stages of his career that required supervision by a senior Border Patrol Agent such that an additional layer of review was afforded to Defendant's processing.  In addition, he testified that a separate witness was present during the interview.  Agent Trujillo's credibility went largely unchallenged, and the Court, based on his demeanor and the consistency of his testimony, finds his testimony credible. In contrast, Defendants' testimony contained multiple inconsistencies with respect to his memory as compared to his declaration submitted concurrently with this motion.  In his initial declaration, he was less than certain about his memory as to what occurred.  At the hearing he was absolutely certain of his memory of event 8 years ago.  This extreme position cannot be credited.  He even stated that we would have remembered every document he saw during the interview, including those in English even though he does not read English.  His testimony was also contradicted by the forms:  Defendant was firm in his memory that the apprehending agents did not ask him questions other than his name—yet forms filled out during his apprehension accurately stated Defendant's mother's name, as well as Defendant's place and date of birth.  He also testified that Agent Trujillo did not ask him nearly all the questions memorialized in the I–867; yet, it is not apparent why the Agent would not have asked any of those questions.  Based on his demeanor and the substance of his testimony, the Court cannot credit Defendant's testimony on key points.

The Court finds that Agent Trujillo informed Defendant of the contents in the Form I–860 in a language that he understood, despite not obtaining Defendant's signature. *Cf. United States v. Rojas-Fuerte*, No. 3:18-CR-347-SI, 2019 WL 1757523, at *5 (D. Or. Apr. 19, 2019) ("In the

1 absence of a signature by Rojas-Fuerte, or at least sworn testimony by the Border Patrol officer,
2 the Court cannot confirm that Rojas-Fuerte actually was advised of the specific charge or charges
3 against him in a language that he could understand sufficient to provide the constitutionally-
4 required notice.").

As to the typographical error in the Form I–867B, the Court finds that error was immaterial to Defendant's rights. He initialed each page and knew there were several pages to the form. The Court also finds that the answers recorded to the questions were an accurate memorialization of the interview and that Agent Trujillo advised Defendant of his rights and the nature of the proceeding as set forth in the forms. The Ninth Circuits decision in *Raya-Vaca* is thus distinguishable. There, the noncitizen signed the statement on the Form I–867B acknowledging that he read or had read to him the statement consistent of one page, when, in fact, it contained four pages. *Raya-Vaca*, 771 F.3d at 1205. The court noted that "some regulations protect due process and other constitutional rights," and that "[d]ue process always requires, at a minimum, notice and an opportunity to respond." *Id*. at 1204. The *Raya-Vaca* court then concluded that the failure to inform the noncitizen of the expedited-removal charge against him and the failure to provide him with an opportunity to review his sworn statement constituted a violation of the Due Process Clause. *Id*. The government did not argue—and therefore conceded—that the immigration officer failed to read the charges to the noncitizen altogether. *Id*. at 1205 ("Government does ***not*** argue that the immigration officer did indeed comply with the regulation at issue by advising Raya–Vaca of the charge against him and reading to him, or allowing him to read, the sworn statement.") (emphasis added). Here the Court finds that the Agent Trujillo informed Defendant of the nature of the proceedings in Spanish and complied with the regulations, save for the exception of the page discrepancy and the missing signature from Defendant. As discussed above, this Court found that Agent Trujillo read and informed Defendant of the nature of the 2012 removal proceeding.

This Court recently decided the identical issues in *United States v. Garcia*, No. 18-CR-00617-EMC-1, 2019 WL 2515845 (N.D. Cal. June 18, 2019). In rejecting both of the arguments advanced by Defendant here, this Court found that because the noncitizen initialed the first two

6

1  pages of Form I–867A/B, it amounted to an indication that he did have the opportunity to review
2  the forms in full, notwithstanding the typographical error on the last page. Like the noncitizen in
3  *Garcia*, as noted above, Defendant here "would have recognized that the text indicating the
4  statement consisted of only one page was merely a typographical error." *Id*. at 7. This Court
5  rejected the notion "that the failure to obtain a signature in compliance with § 235.3(b)(2)(i)
6  amount[ed] to a *per se* due process violation." *Garcia*, 2019 WL 2515845 at 7.

7  While district courts in this Circuit have held that the absence of a signature on the reverse
8  side of the Form I–860 amounts to a due process violation, those cases are distinguishable. In
9  *United States v. Ramirez-Diaz*, 359 F. Supp. 3d 994, 998 (D. Or. 2019), *appeal dismissed*, No. 19-
10  30032, 2019 WL 7879683 (9th Cir. May 15, 2019), the court found that "[t]here is no evidence in
11  the record that the immigration official allowed defendant to review Form I–860 or that defendant
12  signed the reverse of the form as required." By contrast, this Court conducted an extensive
13  evidentiary hearing—and, thus, created a record—in order to resolve this issue. This Court heard
14  live testimony as well as considered declarations submitted herewith. The decision in *United
15  States v. Mejia-Avila*, No. 2:14-CR-0177-WFN-1, 2016 WL 1423845, at *1 (E.D. Wash. Apr. 5,
16  2016) is similarly distinguishable because the decision contained no record of what the
17  immigration officer actually alleged he or she did with respect to the Form I–860. Lastly, in
18  *United States v. Figueroa-Valenzula*, No. 1:19-CR-00083-DCN, 2019 WL 6718081 (D. Idaho
19  Dec. 10, 2019), the government, like in *Raya-Vaca*, did not dispute the defendant's attestations in
20  his declaration that it never gave him an opportunity to review his sworn statement or advised him
21  of his rights. Here, as found by this Court via hours of substantive testimony, the Court concludes
22  Defendant received due process.

23  Accordingly, the Court finds that the 2012 expedited-removal proceeding was not
24  fundamentally unfair such that it violated Defendant's due process rights.

## V.   CONCLUSION

26  For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss because the
27  typographical error on Form I–867B is of no consequence, since he initialed the first two pages.
28  The lack of signature on the Form I–860 is not a *per se* due process violation because the

7

remaining paperwork and the testimony from the Agent Trujillo corroborates the allegations that Defendant was informed of the charges against him. Defendant was advised of the nature of the proceedings and all the rights contained in the applicable forms. He also provided answers to questions accurately memorialized in the I–867.

This order disposes of Docket No. 33.

**IT IS SO ORDERED**.

Dated: September 14, 2020

_____
EDWARD M. CHEN
United States District Judge